IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**FILED**

APR 1 0 2018

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

APPLE INC.,

        Plaintiff,

        v.

NOKIA SOLUTIONS AND NETWORKS OY
AND NOKIA SOLUTIONS AND
NETWORKS US LLC,

        Defendants.

Misc. Action No. _____

**A18MC0302 LY**

## APPLE'S MOTION TO COMPEL NOKIA'S COMPLIANCE WITH SUBPOENAS DUCES TECUM AND AD TESTIFANDUM

## I.    INTRODUCTION

The Court should compel Nokia Solutions and Networks Oy Corporation and Nokia Solutions and Networks US LLC (collectively, "the subpoenaed Nokia entities") to produce documents and provide testimony responsive to Apple's November 2017 subpoenas *duces tecum* and *ad testificandum*, as narrowed by the parties' meet and confer process. The subpoenas originate from a dispute between Apple and Qualcomm involving Qualcomm's anticompetitive patent licensing practices and the invalidity of certain Qualcomm patents-in-suit. The scope of the document requests track the deposition topics.

Apple served the subpoenas for documents and testimony nearly five months ago. Having been served in November, the subpoenaed Nokia entities have failed without adequate excuse to obey the subpoenas. *See* Fed. R. Civ. P. 45(g). Apple can wait no longer.

The subpoenas seek three categories of documents, each squarely relevant to Apple's pending claims and defenses: (1) documents concerning Nokia's standard essential patent portfolio

and the competition in the chipset marketplace; (2) documents concerning certain Qualcomm patents that are subject to Apple's declaration of invalidity; and (3) prior art documents. Apple has at all times worked in good faith to focus its requests and to minimize the burden on the subpoenaed Nokia entities. Yet, months after Apple served its original subpoenas, the subpoenaed Nokia entities have declined to produce a single document or identify a representative for deposition—refusing to even provide a position as to multiple categories of requests.

What the subpoenaed Nokia entities have done is channel their efforts into a "moving target" strategy to evade and delay compliance with Apple's subpoenas. To wit, Nokia at first objected to the scope of several requests as overbroad. Apple in turn worked diligently to narrow those requests, ultimately distilling its requests to targeted categories bearing on issues of antitrust and invalidity, even dropping numerous requests in an effort to reach compromise. The subpoenaed Nokia entities, however, still failed to produce any responsive information. Instead, the subpoenaed Nokia entities took the position that "many" relevant documents were only available from its foreign parent corporation, Finland-based Nokia Corporation, and that Nokia will provide any responsive documents to Apple only after Apple has initiated service through The Hague. When Apple tried to reach agreement on this issue, Nokia tried again to renegotiate topic scope, making it clear that Apple could not rely on Nokia's voluntary production under The Hague.

Nokia's latest refusal relies on a corporate shell-game between the subpoenaed Nokia entities and their corporate parent,[1] but Nokia's diversionary tactics should fail. Public records indicate that the subpoenaed Nokia entities are involved in activities that necessitate them having

---

[1]   *See, e.g.*, 2015 Nokia Annual Report, at 192 (identifying the subpoenaed Nokia Solutions and Networks US LLC as one of the "significant subsidiaries" of Nokia Corporation), available at http://www.nokia.com/sites/default/files/files/nokia _form_20-f_2015_uk.pdf.

access to relevant and responsive information, such as Nokia licenses for Standard Essential Patents, records confirming subpoenaed-Nokia Solutions and Networks Oy's ownership of one prior art patent that is the subject of Apple's request, and declarations of essentiality concerning patents formerly owned by Nokia Corp. Because the requested documents are undeniably relevant, and the facts show that at least certain of the requested documents are squarely within the subpoenaed Nokia entities' possession, custody, or control, Apple respectfully requests that the Court order the production of documents and a witness to provide testimony responsive to Apple's subpoena and narrowed requests.

## II.     JURISDICTION

The Court has jurisdiction under the Federal Rules of Civil Procedure to enforce the subpoenas because it is the court where compliance is required. Fed. R. Civ. P. 45(g) (specifying that challenges to compliance are to be made to the court for the district where compliance is required). The subpoenas indicate compliance is required at the following address: 111 Congress Ave., Ste 810, Austin, TX 78701. (Exs. 1, Apple Inc.'s Notice of Subpoena to Nokia Solutions and Networks Oy Corporation, and 2, Apple Inc.'s Notice of Subpoena to Nokia Solutions and Networks US LLC.) The location for compliance is within the geographical territory of the United States District Court for the Western District of Texas. Accordingly, this Court has jurisdiction over the subpoenas.[2]

---

[2]   It is uncontested that each of the subpoenaed Nokia entities was properly served in compliance with Rule 45(b). (Exs. 3, Apple Certificate of Service of Subpoena to Nokia Solutions and Networks Oy Corporation, and 4, Apple Certificate of Service of Subpoena to Nokia Solutions and Networks US LLC.)

### III.  FACTUAL BACKGROUND

Apple served subpoenas with document requests and deposition topics on two Nokia entities on November 3rd, 2017. The document requests and corresponding deposition topics spanned three general subject matters: (1) Nokia's standard essential patent portfolio and competition in the cellular chipset marketplace (including with Qualcomm); (2) ownership and invention documents relating to patents at issue in Apple's pending litigation with Qualcomm; and (3) prior art to patents at issue in the same litigation. Apple served those requests based on publicly available information indicating that the subpoenaed Nokia entities would likely have this information, as reinforced by Apple's own dealings with Nokia.

The subpoenaed Nokia entities served nearly verbatim objections and responses on November 30th, 2017. (Exs. 5, Responses and Objections to Apple Inc.'s Rule 45 Subpoena by Nokia Solutions and Networks Oy Corp., and 6, Responses and Objections to Apple Inc.'s Rule 45 Subpoena by Nokia Solutions and Networks US LLC.) For some requests, the subpoenaed Nokia entities committed to producing documents, although none have actually been produced. For other requests, the subpoenaed Nokia entities refused to produce documents. And for the remaining requests, the subpoenaed Nokia entities did not take a final position, offering instead that each "will not search for the full scope of documents requested at this time, but [each entity] is willing to meet and confer regarding the scope of this request." Apple promptly engaged the subpoenaed Nokia entities to understand what each was willing to produce:

- On December 19th the parties held a teleconference. Pertinent to this motion, during that call the subpoenaed Nokia entities demanded, and Apple provided, an explanation of the relevance of each of its document requests.

APPLE'S MOTION TO COMPEL NOKIA'S COMPLIANCE WITH                                      Page 4
SUBPOENAS DUCES TECUM AND AD TESTIFANDUM

- Following that teleconference, Apple wrote to Nokia on December 26th to "summarize[] our understanding" and "confirm that you will conduct a reasonable search, produce responsive documents, and designate witnesses for deposition topics." (Ex. 7.) Apple's letter further limited the document requests by withdrawing 7 requests and narrowing the majority of the remaining requests. Apple also provided additional explanations of what it was seeking to assist the subpoenaed Nokia entities with what Apple understood to be a good-faith search and production of documents.

- The subpoenaed Nokia entities intentionally delayed responding for an entire month. Rather than produce any documents, they insisted that Apple had now missed a deadline for enforcing the subpoenas. (Ex. 8.) The subpoenaed Nokia entities asserted that "the local Court is now unlikely to enforce Apple's subpoena" and "[a]s a result, Nokia believes, now more than ever, that Apple must limit its requests to only what it absolutely needs with the least burden on Nokia if any agreement is to be struck." (*Id.*)

- Apple responded on February 1st to challenge this "Gotcha Gamesmanship" and put the subpoenaed Nokia entities on notice that Apple would seek appropriate relief from the Court. (Ex. 9.) Apple's letter also appended an exhibit listing the narrowed requests.

- Before moving the Court, Apple agreed to confer once more with the subpoenaed Nokia entities. That meeting took place on February 6th.

- Afterwards, on February 16th the subpoenaed Nokia entities wrote to Apple that they would now "conduct a search for and produce any responsive, non-privileged

documents *so long as Nokia and Apple reach agreement as to the scope of the document requests.*"  (Ex. 10.)  Ominously, it was another attempt to renegotiate topic scope, including on topics that Nokia previously agreed on.  And there was the added caveat that Apple first "initiate[] service through The Hague" on the Finish corporate parent.

- In March, pursuant to a discovery coordination order, Apple traveled to Belgium to participate in a deposition of a Nokia witness appearing on behalf of the Finish corporate parent.  The deposition was secured by Qualcomm and the Federal Trade Commission, who had also subpoenaed the same Nokia entities.  The deposition was an opportunity to simplify the disputed issues at a minimized burden to Nokia, but Nokia instead chose to exclude Apple from deposition scope negotiations and the testimony was ultimately limited—excluding topics requested in Apple's subpoenas.

Apple remains willing to further engage in the meet and confer process with the subpoenaed Nokia entities, but Apple must preserve its requests for production.

## IV.    ARGUMENT

### A.    Applicable Law

The Federal Rules of Civil Procedure encourage broad rather than restrictive discovery. *See STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754, 756 (E.D. Tex. 2004).  The scope of discovery is defined by Fed. R. Civ. P. 26(b)(1), which allows for "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Federal Rule 45 governs requests for discovery from third parties, and mandates the production of relevant documents and things in the responding party's "possession, custody, or control."  FED. R. CIV. P. 45(a)(1)(A)(iii).  "[T]he deposition-discovery rules are to be

accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials." *Herbert v. Lando*, 441 U.S. 153, 177 (1979).

> **1.  Documents and information regarding any matter that is not privileged and relevant to the claims or defense of any party is discoverable**

The Advisory Committee Notes to the 1970 Amendment to Rule 45 state that the "scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules." Fed. R. Civ. P. 45, Advisory Committee Note (1970).  Under Rule 34, the proper scope of discovery is as specified in Rule 26(b).  *See* Fed. R. Civ. P. 34; *see also Heat & Control, Inc. v. Hester Industries. Inc.*, 785 F.2d 1017 (Fed. Cir. 1986) ("[R]ule 45(b)(1) must be read in light of Rule 26(b).").

Federal Rule 26(b), in turn, permits the discovery of any non-privileged material "relevant to the claim or defense of any party," where "relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(l).

> **2.  Documents that a party has a practical ability to obtain are within its "possession, custody or control"**

The subpoenaed Nokia entities have admitted to being in possession of responsive documents to Apple's subpoenas and should be ordered to produce them to Apple.

Further, the subpoenaed Nokia entities are in control of additional responsive documents that may be in the possession of Nokia Corp.  The Fifth Circuit broadly interprets the concept of "control" under the Federal Rules. *See Kamatani v. BenQ Corp.*, No. 2:03-CV-437, Dkt. No. 175, slip op. at 9-10 (E.D. Tex. Oct. 6, 2005) (Ward, J.); *In re Anschuetz & Co., GmbH*, 754 F.2d 602, 607 (5th Cir. 1985), *cert. granted, vacated on other grounds*, 483 U.S. 1002 (1987), *on remand,*

838 F.2d 1362 (1988). Other courts and legal scholars are in full accord. *See, e.g.*, 7 JAMES WM.

MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 34.14[2][b] (3d ed. 1997).

On the issue of a party's control over documents "in the technical, physical possession of

a legally distinct entity," the court held in *Kamatani* that:

> It is well-settled that a party is obligated to produce documents within its ***control***, and its obligations are not limited to those documents within the party's physical possession. . . . "Control" ***does not require*** that a party have ***legal ownership or actual physical possession*** of the documents at issue; rather, documents are considered to be under a party's control for discovery purposes when that party has the ***right, authority, or practical ability*** to obtain the documents from a nonparty to the suit.

No. 2:03-CV-437, Dkt. No. 175, slip op. at 9-10 (citing *Rosie D. v. Romney*, 256 F. Supp. 2d 115

(D. Mass. 2003) and *Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135 (S.D.N.Y.

1997)) (emphasis added). Addressing a similar issue, the Fifth Circuit held with respect to

documents in the possession of a party's nonparty foreign affiliate that:

> The documents and records that a corporation requires in the normal course of its business are presumed to be in its control unless the corporation proves otherwise. Any other rule would allow corporations to improperly evade discovery.... ***[T]he fact that documents are situated in a foreign country does not bar their discovery***.

*Anschuetz*, 754 F.2d at 607 (citing *Cooper Industries, Inc. v. British Aerospace, Inc.*, 102 F.R.D.

918, 919-20 (S.D.N.Y. 1984)). Thus, this Court and the Fifth Circuit—where at least one of the

subpoenaed Nokia entities is located—encourage broad rather than restrictive discovery where the

party from whom discovery is sought and its related nonparty foreign entity share a relationship

under which the former has the "right, authority or the ***practical ability***" to obtain the relevant

documents sought by the moving party. Furthermore, this Court and the Fifth Circuit presume

control over such documents where the party from whom discovery is sought utilizes the relevant

documents in the normal course of its business.

### B.    The Requested Documents Are Relevant

Under Rule 26(a), Fed. R. Civ. P., Apple is entitled to "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." As confirmed by Nokia's February 16th agreement to "search for and produce any responsive, non-privileged documents," there is no dispute that the requested documents are relevant.

For example, document requests 29-35 focus on documents showing Nokia's analysis of its own portfolio of Standard Essential Patents, as well as documents related to Nokia's agreements with Qualcomm. As part of its prayer for relief, Qualcomm has requested a declaration that Qualcomm satisfied its FRAND commitments to ETSI during negotiations with Apple. At minimum, discovery into the value of Nokia's total patent portfolio and Nokia's agreements with Qualcomm may provide a frame of reference for the value of Qualcomm's total patent portfolio, and, by extension, guidance as to what would constitute a Fair, Reasonable, and Non-Discriminatory offer. These documents can also provide information as to how Nokia itself perceives the value of the patents that it divested to Qualcomm.

Further, two of the Qualcomm patents at issue were originally assigned to Nokia Corp. and the subject matter of those patents is credited to Nokia Corp. inventors. Document requests 10-16, 18-21, 23, 25, and 27-28 relate to these Qualcomm-assigned patents.

Lastly, Nokia Corp. was the original assignee of two patents related to the same subject matter as one of the Qualcomm patents-in-suit. Nokia Solutions and Networks Oy is also the current assignee of one of those patents. Apple expects that technical documents related to the authentication techniques described in those patents, including documents from the named inventors, would include relevant prior art. Document requests 1-3 and 7-9 relate to these Nokia prior art patents.

### C.    The Documents Are Within Nokia's Custody or Control

The subpoenaed Nokia entities have never stated that they are unable to provide the documents Apple is requesting.  In fact, Nokia did not raise the specific nature of this objection until nearly two months after Apple served its subpoena.  To the contrary, the subpoenaed Nokia entities have admitted to being in possession of at least some responsive documents to Apple's subpoenas. Moreover, that the subpoenaed Nokia entities are aware of other relevant documents that may ultimately be in a Finish entity's possession does not alter the conclusion that those documents too are within the subpoenaed Nokia entities' "possession, custody, or control."

Here, the subpoenaed Nokia entities *conceded* that they are able to conduct a search for and produce documents from their Finish corporate parent.  Although the subpoenaed Nokia entities conditioned their willingness to do so on Apple having first initiated service through The Hague, it is clear that *initiating* service through The Hague will not change the subpoenaed entities' control over the documents in Finland.  Accordingly, if the subpoenaed Nokia entities have control to produce the documents *before* Apple effectuates service through The Hague, then they should be compelled to produce the documents now—without further delay.

Additionally, Apple's experience has revealed the close relationship between the subpoenaed Nokia entities and their affiliate companies.  For example, as it relates to Nokia's licenses covering Standards Essential Patents, at least the licenses that convey rights to the patents of the subpoenaed Nokia entities are logically in the control of those entities, regardless of which Nokia entity is ultimately the keeper of those licenses.  A contrary result would allow the subpoenaed U.S. entities to outsource patent licensing to the corporate parent, and then rely on the separation to claim that relevant licenses are outside its control.

## V.     CONCLUSION

For the foregoing reasons, Apple respectfully requests the Court grant the motion and order

Nokia to immediately produce all responsive documents.

Dated: April 10, 2018                    Respectfully submitted,

FISH & RICHARDSON P.C.

By: */s/ David M. Hoffman*
     David M. Hoffman
     Texas Bar No. 24046084
     hoffman@fr.com
     One Congress Plaza
     111 Congress Avenue, Suite 810
     Austin, TX 78701
     Tel: (512) 472-5070
     Fax: (512) 320-8935

COUNSEL FOR PLAINTIFF, APPLE INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 10, 2018 the foregoing document was served electronically in compliance with Local Rule CV-5(b)(2) upon Defendants' counsel as follows:

| | |
|---|---|
| Ryan Koppelman<br>ryan.koppelman@alston.com<br>ALSTON & BIRD LLP<br>1950 University Ave, 5th Floor<br>East Palo Alto, CA 94303<br>Tel: (650) 838-2000<br><br>***Attorney for Defendants*** | |

/s/ David M. Hoffman
David M. Hoffman